**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

DAN BERTSOS, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

CENTRAL STATES DERMATOLOGY SERVICES, LLC, doing business as DOCS and as DOCS DERMATOLOGY GROUP and as DERMATOLOGISTS OF CENTRAL STATES,

and

DERMATOLOGISTS OF CENTRAL STATES, LLC, doing business as DOCS and as DOCS DERMATOLOGY GROUP, and as DERMATOLOGISTS OF CENTRAL STATES,

Defendants.

Case No. 1:26-cv-00099

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Dan Bertsos ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Defendant Central States Dermatology Services, LLC, doing business as DOCS and as DOCS Dermatology Group and as Dermatologists of Central States, and Defendant Dermatologists of Central States, LLC, doing business as DOCS and as DOCS Dermatology Group and as Dermatologists of Central States (collectively "Defendants"), based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation by counsel as to all other matters:

## SUMMARY OF THE CASE

1. The release, disclosure, and publication of sensitive, private data can be devastating. Not only is it an intrusion of privacy and a loss of control, but it is a harbinger of identity

theft: for victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have grave consequences for victims for years after the actual date of the breach—with the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, obtain government benefits, and/or obtain driver's licenses in the victims' names, forcing victims to maintain a constant vigilance over the potential misuse of their information. Moreover, the release disclosure, and publication of private medical information, such as diagnosis, medications and prescriptions can lead to sophisticated and costly insurance fraud, as well as embarrassment, humiliation and blackmail.

2. This action arises from Defendants' failure to secure the personally identifiable information ("PII")[2] and protected health information ("PHI")[3] (collectively, "Private Information") of Plaintiff and the members of the proposed Class, who are current and former patients of Defendant.

---

[1] Dave Maxfield & Bill Latham, *Data Breaches: Perspectives from Both Sides of the Wall*, 25 S.C. Lawyer 28- 35 (May 2014).

[2] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8).

[3] Under the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq.*, and its implementing regulations ("HIPAA"), "protected health information" is defined as individually identifiable information relating to the past, present, or future health status of an individual that is created, collected, or transmitted, or maintained by a HIPAA-covered entity in relation to the provision of healthcare, payment for healthcare services, or use in healthcare operations. 45 C.F.R. § 160.103 *Protected health information*. "Business Health information such as diagnoses, treatment information, medical test results, and prescription information are considered protected health information under HIPAA, as are national identification numbers and demographic information such as birth dates, gender, ethnicity, and contact and emergency contact information. U.S. Dep't for Health & Hum. Servs., *Summary of the HIPAA Privacy Rule*, https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html (last visited Jan. 29, 2026).

3. Defendants operate dermatology offices across ten states.[4]

4. As a condition of receiving services from Defendants, Plaintiff and Class Members were required to provide Defendants with their sensitive and confidential Private Information.

5. Upon information and belief, between November 19, 2025, and November 27, 2025, an unauthorized actor accessed Defendants' network and exfiltrated sensitive Private Information ("Data Breach").[5]

6. The Private Information intruders accessed and infiltrated from Defendants' systems contained names, addresses, email addresses, phone numbers, dates of birth, Social Security numbers, treatment/diagnosis information, prescription/medication information, dates of service, provider names, medical record numbers, patient account numbers, Medicare/Medicaid ID numbers, health insurance information, and/or medical billing/claims information.[6]

7. As a result of the Data Breach, which Defendants failed to prevent, the Private Information of their patients, including Plaintiff and the proposed Class Members, was stolen.

8. Defendants disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to implement reasonable measures to safeguard their current and former patients' Private Information and by failing to take necessary steps to prevent unauthorized disclosure of that information. Defendants' woefully inadequate data security measures made the Data Breach a foreseeable, and even likely, consequence of their negligence.

9. As a result of the Data Breach, through which their PII and PHI was compromised,

---

[4] *Locations*, DOCS Dermatology Group, https://docsdermgroup.com/listings (last visited Jan. 30, 2026).

[5] *Notice of Data Incident*, PR Newswire (Jan. 26, 2026), https://www.morningstar.com/news/pr-newswire/20260126ph71644/notice-of-data-incident (last visited Jan. 30, 2026).

[6] *Id.*

disclosed, and obtained by unauthorized third parties, Plaintiff and Class Members have suffered concrete damages and are now exposed to a heightened and imminent risk of fraud and identity theft for a period of years, if not decades. Furthermore, Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft, at their own expense. And they must make family and close friends aware that personal health information about Class Members could be used in fraud and phishing attempts targeting their friends and families. Consequently, Plaintiff and the other Class Members will incur ongoing out-of-pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft and other fraudulent behavior.

10. Plaintiff would not have provided their valuable Private Information had they known that Defendants would make their Private Information Internet-accessible, not encrypt personal and sensitive data elements, and not delete the Private Information it no longer had reason to maintain.

11. By this Complaint, Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose private information was accessed during the Data Breach.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, because at least one member of the Class, as defined below, is a citizen of a different state than the Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

13. This Court has personal jurisdiction over Defendants because they are headquartered in Ohio, regularly conduct business in Ohio, and have sufficient minimum contacts

with Ohio, and have purposefully availed themselves of the privilege of doing business in this District such that they could reasonably foresee litigation being brought in this District.

14. Venue is proper in this Court because Defendants' principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

15. Plaintiff is, and at all relevant times has been, a resident and citizen of Ohio, where he intends to remain.

16. Plaintiff is a consumer and patient who has obtained products or services from one or more of the healthcare providers to whom Defendants provide products and services.

17. Plaintiff provided confidential and sensitive PII and PHI to one or more of the healthcare providers to whom Defendants provide products and services and those companies, in turn, provided Plaintiff's PII and PHI to Defendants, in connection with Defendants' provision of their services. On information and belief, Defendants obtained and continue to maintain Plaintiff's PII and PHI and have a legal duty and obligation to protect that PII and PHI from unauthorized access and disclosure.

18. Plaintiff would not have entrusted his PII and PHI to Defendants had he known that Defendants failed to maintain adequate data security.

19. On or about January 28, 2026, Plaintiff Bertsos discovered that his information was likely compromised in the Data Breach.

20. Plaintiff subsequently spent substantial time taking action to mitigate the impact of the Data Breach, including researching the Data Breach, researching ways to protect himself from data breaches, and reviewing his financial and medical accounts for fraud or suspicious activity.

He now plans to spend several hours a month checking account statements for irregularities.

21. As a result of the Data Breach and the release of his PHI and PII, which he expected Defendants to protect from disclosure, Plaintiff has suffered emotional distress, including anxiety, concern, and unease about unauthorized parties viewing and potentially using his PHI and PII. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money to contain the impact of the Data Breach.

22. Defendant Central States Dermatology Services, LLC, is a Delaware limited liability company with its principal place of business located at 9987 Carver Road, Suite 250, Blue Ash, Ohio 45242, which does business as Dermatologists of Central States and as DOCS and as DOCS Dermatology Group.

23. Defendant Dermatologists of Central States, LLC, is a Delaware limited liability company with its principal place of business located at 9987 Carver Road, Suite 250, Blue Ash, Ohio 45242, which does business as DOCS and as DOCS Dermatology Group and as Dermatologists of Central States.

24. Plaintiff has been unable to determine the identity of the members of the Defendant limited liability companies, but upon information and belief, they are affiliates of one another, and are jointly engaged in the business and practices alleged herein.

## <u>FACTUAL ALLEGATIONS</u>

### A. Defendant failed to adequately protect customer data, resulting in the Data Breach.

25. In the course of its business, Defendants collect names, phone numbers, Social Security numbers, physical addresses, driver's license information, insurance, and medical information from their customers and the customers of their customers. They also maintain medical records subject to the requirements and standards of the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

26. As a condition of providing services, Defendants receive, create, and handle the PII and PHI of Plaintiff and Class Members.

27. Plaintiff and Class Members must provide Defendants with their sensitive and confidential PII and PHI in order to receive healthcare services. Plaintiff reasonably expected that Defendants would safeguard their highly sensitive information and keep it confidential.

28. Due to the sensitivity of the PII and PHI that Defendants handle, Defendants are aware of the critical responsibility to safeguard this information—and, therefore, how devastating its theft is to individuals whose information has been stolen.

29. By obtaining, collecting, and storing Plaintiff's and Class Members' PII and PHI, Defendants assumed equitable and legal duties to safeguard and keep confidential Plaintiff's and Class Members' highly sensitive information, to only use this information for business purposes, and to only make authorized disclosures.

30. Despite the existence of these duties, Defendants failed to implement reasonable data security measures to protect the information with which they were entrusted and ultimately allowed nefarious third-party hackers to compromise Plaintiff's and Class Members' PII and PHI.

31. Defendants issued a press release describing certain aspects of the Data Breach. But it has not issued notice to those affected, so hundreds of thousands of consumers likely do not yet know that their information was impacted by this data breach.

**B. Defendants Were Well Aware of the Need to Take Special Care With Consumers' PII, PHI and Medical Information.**

32. Defendants claim to maintain protected information in compliance with HIPAA requirements.

33. Defendants made these representations concerning securing consumers PII and PHI because they knew and understood the severe consequences of losing this data.

34. As early as 2014, the FBI alerted the healthcare industry that they were an increasingly preferred target of hackers, stating "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining Protected Health Information (PHI) and/or Personally Identifiable Information (Personal Information)" so that these companies can take the necessary precautions to thwart such attacks.[7]

35. The healthcare industry has become a rich target for hackers: "High demand for patient information and often-outdated systems are among the nine reasons healthcare is now the biggest target for online attacks."[8] "The IT environments of healthcare organizations are often complex and difficult to secure. Devices and software continue to be used that have reached end-of-life, as upgrading is costly and often problematic. Many healthcare providers use software solutions that have been developed to work on specific – and now obsolete – operating systems and cannot be transferred to supported operating systems."[9]

36. PII has considerable value and constitutes an enticing and well-known target to hackers. Hackers easily can sell stolen data as there has been a "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[10] PHI, in addition to being of a highly personal and private nature, can be used for

---

[7] Jim Finkle, *FBI warns healthcare firms they are targeted by hackers*, Reuters (Aug. 20, 2014), https://www.reuters.com/article/us-cybersecurity-healthcare-fbi-idUSKBN0GK24U20140820 (last accessed Jan. 30, 2026).

[8] *9 Reasons why healthcare is the biggest target for cyberattacks*, Swivel Secure, https://swivelsecure.com/solutions/healthcare/healthcare-is-the-biggest-target-for-cyberattacks (last accessed Jan. 30, 2026).

[9] Steve Alder, *Why Do Criminals Target Medical Records*, HIPAA Journal (Oct. 14, 2022), https://www.hipaajournal.com/why-do-criminals-target-medical-records/#:~:text=Healthcare%20records%20are%20so%20valuable,credit%20cards%20in%20victims'%20names (last accessed Jan. 30, 2026).

[10] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), https://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/ (last accessed Jan. 30, 2026).

medical fraud and to submit false medical claims for reimbursement.

### C. Defendants Failed To Comply With Regulatory Guidance And Industry-Standard Cybersecurity Practices.

37. Defendants' data security failure stems from their failure to comply with state and federal laws and requirements as well as industry standards governing the protection of PII and PHI.

38. At least twenty-four states have enacted laws addressing data security practices that require that businesses that own, license or maintain PII to implement and maintain "reasonable security procedures and practices" and to protect PII from unauthorized access.

39. Defendants also failed to comply with Federal Trade Commission ("FTC") guidance on protecting PII and industry-standard cybersecurity practices. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, failing to use reasonable measures to protect PII by companies like Defendants. Several publications by the FTC outline the importance of implementing reasonable security systems to protect data. The FTC has made clear that protecting sensitive customer data should factor into virtually all business decisions.

40. The FTC recommends that companies should:

- Implement and periodically review access controls for who has access to customer information and reconsider on a regular basis whether they still have a legitimate business need for it.
- Know what they have and where they have it by conducting a periodic inventory of data, and keeping an accurate list of all systems, devices, platforms, and personnel.
- Encrypt customer information on their systems and when it's in transit.
- Assess the apps they use to store, access, or transmit customer information.
- Implement multi-factor authentication for anyone accessing customer information on their systems.

- Dispose of customer information securely, no later than two years after their most recent use of it to serve the customer.
- Anticipate and evaluate changes to their information systems or networks, since changes to an information system or network can undermine existing security measures.
- Maintain a log of authorized users' activity and monitor for unauthorized access, and implement procedures and controls to monitor when authorized users are accessing customer information on their systems and to detect unauthorized access.[11]

41. The FTC has also issued numerous guides for businesses highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[12]

42. In 2016, the FTC updated its publication, *Protecting PII: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[13] The guidelines note businesses should protect the personal customer information that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

---

[11] *FTC Safeguards Rule: What Your Business Needs to Know: What does a reasonable information security program look like?*, FTC (Dec. 2024), https://www.ftc.gov/tips-advice/business-center/guidance/financial-institutions-customer-information-complying (last accessed Jan 30, 2026).

[12] *Start With Security*, 2, FTC (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed Jan. 30, 2026).

[13] *Protecting PII: A Guide for Business*, FTC (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed Jan. 30, 2026).

43. The FTC recommends that businesses delete payment card information after the time needed to process a transaction; restrict employee access to sensitive customer information; require strong passwords be used by employees with access to sensitive customer information; apply security measures that have proven successful in the particular industry; and verify that third parties with access to sensitive information use reasonable security measures.

44. The FTC also recommends that companies use an intrusion detection system to immediately expose a data breach; monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; monitor for the transmission of large amounts of data from the system; and develop a plan to respond effectively to a data breach in the event one occurs.

45. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

46. The FTC has interpreted Section 5 of the FTC Act to encompass failures to appropriately store and maintain personal data.

47. According to the Federal Bureau of Investigation (FBI), phishing schemes designed to induce individuals to reveal personal information, such as network passwords, were the most common type of cybercrime in 2020, with such incidents nearly doubling in frequency between 2019 and 2020.[14] According to Verizon's *2021 Data Breach Investigations Report*, 43%

[14] *2020 Internet Crime Report*, FBI, https://www.ic3.gov/Media/PDF/AnnualReport/2020_IC3 Report.pdf (last accessed Jan. 30, 2026).

of breaches stemmed from phishing and/or pretexting schemes.[15]

48. On October 28, 2020, the FBI and two federal agencies issued a "Joint Cybersecurity Advisory" warning that they have "credible information of an increased and imminent cybercrime threat to U.S. hospitals and healthcare providers."[16] The Cybersecurity and Infrastructure Security Agency (CISA), the Department of Health and Human Services (HHS), and the FBI issued the advisory to warn healthcare providers to take "timely and reasonable precautions to protect their networks from these threats."[17]

49. Defendants were aware of their obligations to protect customers' PII, PHI and privacy before and during the Data Breach, yet failed to take reasonable steps to protect customers from unauthorized access. In this case, Defendants were at all times fully aware of the obligation to protect the PII and PHI of Defendants' customers because of their status as one of the largest EHR vendors in the nation. Defendants were also aware of the significant repercussions if they failed to do so because Defendants collected PII and PHI from millions of consumers and knew that this PII and PHI, if hacked, would result in injury to consumers, including Plaintiff and Class Members.

50. Based upon the known details of the Data Breach and how it occurred, Defendants also failed to fully comply with industry-standard cybersecurity practices, including, but not limited to, proper firewall configuration, network segmentation, secure credential storage,

---

[15] *2021 DBIR Master's Guide*, Verizon, https://www.verizon.com/business/en-au/resources/reports/dbir/2021/results-and-analysis/ (last accessed Jan. 30, 2026).

[16] *Joint Cybersecurity Advisory: Ransomware Activity Targeting the Healthcare and Public Health Sector*, CISA, FBI & HHS (Oct. 29, 2020), https://us-cert.cisa.gov/sites/default/files/publications/AA20-302A_Ransomware%20_Activity_Targeting_the_Healthcare_and_Public_Health_Sector.pdf (last accessed Jan. 30, 2026).

[17] *Id*.

rate limiting, user-activity monitoring, data-loss prevention, and intrusion detection and prevention.

**D. Defendants failed to comply with HIPAA's data security requirements.**

51. Defendants recognize that they are covered by HIPAA, are covered by HIPAA (see 45 C.F.R. § 160.102), and are required to comply with the HIPAA Privacy Rule and Security Rule.[18] These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

52. HIPAA prohibits unauthorized disclosures of "protected health information" and it requires that Defendant implement appropriate safeguards for this information. HIPAA requires that entities covered by its rules, including Defendant, provide notice of a breach of unsecured protected health information—i.e., non-encrypted data—without unreasonable delay and in no case later than 60 calendar days after discovery of a breach.

53. Following a data breach at a HIPAA covered entity, the HIPAA Omnibus Rule dictates it "must now undertake a four-factor risk assessment to determine whether or not PHI has been compromised and overcome the presumption that the breach must be reported." The four-factor risk assessment includes:

a) the nature and extent of the PHI involved in the incident (e.g., whether the incident involved sensitive information like social security numbers);
b) the recipient of the PHI;

[18] 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

c) whether the PHI was actually acquired or viewed; and,

d) the extent to which the risk that the PHI was compromised has been mitigated following unauthorized disclosure (e.g., whether it was immediately sequestered and destroyed)."[19]

54. The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires HIPAA covered entities and their business associates to provide notification following a breach of unsecured protected health information.

55. Defendants failed to comply with these HIPAA requirements and, indeed, their own Privacy Practices. Defendants did not:

a) Maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b) Adequately protect Plaintiff's and the Class Members' Personal Information;

c) Ensure the confidentiality and integrity of electronically protected health information created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d) Implement technical policies and procedures for electronic information systems that maintain electronically protected health information to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e) Implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

f) Implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

[19] 78 Fed. Reg. 5641-46; see also 45 C.F.R. § 164.304.

g) Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

h) Take safeguards to ensure that Defendants' business associates adequately protect protected health information;

i) Properly send timely notice to Plaintiff and the Class Members pursuant to 45 C.F.R. §§ 164.400-414;

j) Ensure compliance with the electronically protected health information security standard rules by its workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

k) Train all members of their workforce effectively on the policies and procedures with respect to protected health information as necessary and appropriate for the members of their workforce to carry out its functions and to maintain security of protected health information, in violation of 45 C.F.R. §164.530(b).

**E. The Data Breach puts Plaintiff and Class Members at increased risk of fraud and identity theft.**

56. Defendants' failure to keep Plaintiff's and Class Members' PII secure has severe ramifications. Given the sensitive nature of the PII and PHI stolen in the Data Breach—names, addresses, zip codes, phone numbers, email addresses, dates of birth, Social Security Numbers, and health information—hackers can commit identity theft, financial fraud, and other identity-related fraud against Plaintiff and Class Members now and into the indefinite future. As a result, Plaintiff and Class Members have suffered injury and face an imminent and substantial risk of further injury including identity theft and related cybercrimes due to the Data Breach.

57. There is little doubt that consumers PII and PHI from the Data Breach will be circulating on the dark web, as it is highly valuable. Malicious actors use PII and PHI to, among other things, gain access to consumers' bank accounts, social media, and credit cards. Malicious

actors can also use consumers' PII and PHI to open new financial accounts, open new utility accounts, obtain medical treatment using victims' health insurance, file fraudulent tax returns, obtain government benefits, obtain government IDs, or create "synthetic identities."[20]

58. Further, identity thieves often wait months or years to use PII obtained in data breaches, as victims often become complacent and less diligent in monitoring their accounts after a significant period has passed. These bad actors will also re-use stolen PII, meaning individuals can be the victim of several cybercrimes stemming from a single data breach. Moreover, although elements of some Plaintiff's and Class Members' data may have been compromised in other data breaches, the fact that the Breach centralizes the PII and PHI and identifies the victims as Defendants' customers materially increases the risk to Plaintiff and the Class.

59. The U.S. Government Accountability Office ("GAO") determined that "stolen data may be held for up to a year or more before being used to commit identity theft," and that "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[21] Moreover, there is often significant lag time between when a person suffers harm due to theft of their PII and when they discover the harm. Plaintiff will therefore need to spend time and money to continuously monitor their accounts for years to ensure their PII obtained in the Data Breach is not used to harm them. Plaintiff and Class Members thus have been harmed in the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Data Breach. In other words, Plaintiff and Class Members have been harmed by the value of identity protection services

[20] A criminal combines real and fake information to create a new "synthetic" identity, which is used to commit fraud.

[21] *Report to Congressional Requesters: Personal Information*, 29, GAO (June 2007), https://www.gao.gov/assets/gao-07-737.pdf (last accessed Jan. 30, 2026).

they must purchase in future to ameliorate the risk of harm they now face due to the Data Breach.

60. Plaintiff and Class Members have also realized harm in the lost or reduced value of their PII. Defendants admit the PII compromised in the Breach is valuable. Defendants' revenues are predicated on Defendants' collection, retention, and use of Plaintiff's PII and PHI. Plaintiff's PII is not only valuable to Defendants, but Plaintiff also place value on their PII based on their understanding that their PII is a financial asset to companies who collect it.[22]

61. Plaintiff and Class Members have also been harmed and damaged in the amount of the market value of the hacker's unauthorized access to Plaintiff's PII and PHI that was permitted without authorization by Defendants. This market value for access to PII can be determined by reference to both legitimate and illegitimate markets for such information.

62. Moreover, Plaintiff and Class Members value the privacy of this information and expect Defendant to allocate enough resources to ensure it is adequately protected. Plaintiff and Class Members would not have done business with Defendants, or Defendants' customers, provided their PII and PHI, or paid the same prices for the services of Defendants' customers' goods and services had they known Defendants did not implement reasonable security measures to protect their PII.[23] Customers reasonably expect that the payments they make to Defendants,

---

[22] *See, e.g.*, *Trend Micro, Ponemon Global Study Reveals Privacy is a Concern, but Consumers Remain Undeterred*, (Trend Micro Inc., Mar. 31, 2015), https://newsroom.trendmicro.com/2015-03-31-Trend-Micro-Ponemon-Global-Study-Reveals-Privacy-is-a-Concern-but-Consumers-Remain-Undeterred (explaining that survey results showed "most consumers would be willing to provide companies information such as gender, name, purchase habits, and even their health condition and log in credentials, if they were compensated"); *How Much is Your Personal Data Worth? Survey Says…*, (Trend Micro Inc., Apr. 14, 2015), https://www.trendmicro.com/vinfo/us/security/news/internet-of-things/how-much-is-your-personal-data-worth-survey-says (survey results showed consumers valued their Social Security numbers at $55.70).

[23] Lee Bell, *Data breaches 'have destroyed customers' trust in companies'* (ITPtr, May 12, 2016), https://www.itpro.com/data-leakage/26529/data-breaches-have-destroyed-customers-trust-in-companies (last accessed Jan. 30, 2026) (noting almost 50% of consumers would consider paying

their customer healthcare providers, and those made on their behalf through government programs and insurance, incorporate the costs to implement reasonable security measures to protect customers' PII. And because consumers value data privacy and security, companies with robust data security practices can command higher prices than those who do not. As a result, Plaintiff and Class Members did not receive the benefit of their bargain with Defendant, or Defendants' healthcare customers, because they paid for services they expected but did not receive.

63. Given Defendants' failure to protect their PII and PHI, Plaintiff and Class Members have a significant and cognizable interest in obtaining injunctive and equitable relief (in addition to any monetary damages, restitution, or disgorgement) that protects them from suffering further harm, as their PII and PHI remains in Defendants' possession. Accordingly, this action represents the enforcement of an important right affecting the public interest and will confer a significant benefit on the general public or a large class of persons.

64. In sum, Plaintiff and Class Members were injured as follows: (i) theft of their PII and PHI and the resulting loss of privacy rights in that information; (ii) improper disclosure of their PII and PHI; (iii) loss of value of their PII and PHI; (iv) the lost value of unauthorized access to Plaintiff's and Class Members' PII and PHI permitted by Defendants; (v) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Data Breach; (vi) Defendants' retention of profits attributable to Plaintiff's and Class Members' PII and PHI that Defendants failed to adequately protect; (vii) the certain, imminent, and ongoing threat of fraud and identity theft, including the economic and non-economic impacts that flow therefrom; (viii) ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of the

---

more in order to work with a provider that has better data security. Likewise, 62% of consumers intended to provide less PII to companies generally because of data breaches).

Data Breach; (ix) overpayments to Defendants for goods and services purchased, as Plaintiff reasonably believed a portion of the sale price would fund reasonable security measures that would protect their PII and PHI, which was not the case; and (x) nominal damages.

## CLASS ALLEGATIONS

65. Plaintiff brings this class action individually and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), on behalf of the following Class:

> **All persons residing in the United States whose Personally Identifiable Information and Protected Health Information was compromised in the Data Breach.**

66. Excluded from the Class are Defendants and their affiliates, parents, subsidiaries, officers, agents, and directors, any entities in which Defendants have a controlling interest, as well as the judge(s) presiding over this matter and the clerks, judicial staff, and immediate family members of said judge(s).

67. Plaintiff reserves the right to modify or amend the foregoing Class definitions before the Court determines whether certification is appropriate.

68. Numerosity: The members in the Class are so numerous that joinder of all Class Members in a single proceeding would be impracticable. The precise number of individuals affected has not yet been disclosed, but at a minimum, hundreds of thousands of people are members of the class.

69. Commonality and Predominance: Common questions of law and fact exist as to all Class Members and predominate over any potential questions affecting only individual Class Members. These common questions of law or fact include, *inter alia*:

a. Whether Defendants engaged in the conduct alleged herein;

b. Whether Defendants had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class Members' Private Information from unauthorized access and disclosure;

c. Whether Defendants' computer systems and data security practices used to protect Plaintiff's and Class Members' Private Information violated federal and/or state laws, and/or Defendants' other duties discussed herein;

d. Whether Defendants failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and Class Members;

e. Whether Defendants unlawfully shared, lost, or disclosed Plaintiff's and Class Members' Private Information;

f. Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g. Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

h. Whether Plaintiff and Class Members suffered injury as a proximate result of Defendants' negligent actions or failures to act;

i. Whether Defendants failed to exercise reasonable care to secure and safeguard Plaintiff's and Class Members' Private Information;

j. Whether Defendants breached duties to protect Plaintiff's and Class Members' Private Information;

k. Whether Defendants' actions and inactions alleged herein were negligent;

l. Whether Defendants were unjustly enriched by their conduct as alleged herein;

m. Whether an implied contract existed between Defendants and Plaintiff with respect to protecting Private Information and privacy, and whether that contract was breached;

n. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages or other relief, and the measure of such damages and relief;

o. Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

p. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

70. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of himself and all other Class Members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

71. Typicality: Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had his Private Information compromised in the Data Breach. Plaintiff and Class Members were injured by the same wrongful acts, practices, and omissions committed by Defendants, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class Members.

72. Adequacy: Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff is an adequate representative of the Class and has no interests adverse to, or

conflict with, the Class he seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex data breach class actions of this nature.

73. Superiority: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and all other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class Members to individually seek redress from Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

74. Injunctive and Declaratory Relief: Defendants have acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

75. Likewise, particular issues are appropriate for certification under Rule 24(c)(4) because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein, such as (a) whether Defendants owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, and safeguarding their Private Information; (b) whether Defendants failed to adequately monitor and audit their data security systems; and (c) whether Defendants failed to take reasonable steps to safeguard the Private Information of Plaintiff and Class Members.

76. All members of the proposed Class are readily ascertainable. Defendants have access to the names in combination with addresses and/or e-mail addresses of Class Members affected by the Data Breach. Indeed, upon information and belief, the impacted Class Members already have been preliminarily identified despite the fact that they have not yet been sent a letter notifying them of the Data Breach.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class Against Defendant)

77. Plaintiff realleges and incorporates by reference paragraphs 1-76 as if fully set forth herein.

78. Defendants owed a duty to Plaintiff and Class Members, arising from the sensitivity of the information, the expectation the information was going to be kept private, and the foreseeability of its data safety shortcomings resulting in an intrusion, to exercise reasonable care in safeguarding their sensitive personal information. This duty included, among other things, designing, implementing, maintaining, monitoring, and testing Defendants' networks, systems, protocols, policies, procedures, and practices to ensure that Plaintiff's and Class Members' information was adequately secured from unauthorized access.

79. Defendants' Privacy Policies acknowledged Defendants' duty to adequately protect Plaintiff's and Class Members' PII and PHI.

80. Defendants are covered by HIPAA (see 45 C.F.R. § 160.102) and, as such are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health

Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

81. Defendants owed a duty to Plaintiff and Class Members to implement administrative, physical, and technical safeguards, such as intrusion detection processes that detect data breaches in a timely manner, to protect and secure Plaintiff's and Class Members' PII and PHI.

82. Defendants also had a duty to only maintain PII and PHI that was needed to serve customer needs.

83. Defendants owed a duty to disclose the material fact that its data security practices were inadequate to safeguard Plaintiff's and Class Members' PII and PHI.

84. Defendants also had independent duties under Plaintiff's and Class Members' state laws that required Defendants to reasonably safeguard Plaintiff's and Class Members' PII and PHI, and promptly notify them about the Data Breach.

85. Defendants had a special relationship with Plaintiffs and Class Members as a result of being entrusted with their PII and PHI, which provided an independent duty of care. Plaintiff's and Class Members' willingness to entrust Defendants with their PII and PHI was predicated on the understanding that Defendants would take adequate security precautions. Moreover, Defendants were capable of protecting its networks and systems, and the PII and PHI it stored on them, from unauthorized access.

86. Defendants breached their duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard Plaintiff's and Class Members' PII and PHI, including administrative, physical, and technical safeguards; (b) failing to detect the Data Breach in a timely manner; and (c) failing to disclose that their data security practices were inadequate to safeguard Plaintiff's and Class Members' PII and PHI.

87. But for Defendants' breach of duties, including the duty to use reasonable care to protect and secure Plaintiff's and Class Members' PII and PHI, Plaintiff's and Class Members' PII and PHI would not have been accessed by unauthorized parties.

88. Plaintiffs and Class Members were foreseeable victims of Defendants' inadequate data security practices. Defendants knew or should have known that a breach of their data security systems would cause damage to Plaintiffs and Class Members.

89. It was reasonably foreseeable that the failure to reasonably protect and secure Plaintiff's and Class Members' PII and PHI would result in unauthorized access to Defendants' networks, databases, and computers that stored or contained Plaintiff's and Class Members' PII and PHI.

90. As a result of Defendants' negligent failure to prevent the Data Breach, Plaintiffs and Class Members suffered injury, which includes, but is not limited to, exposure to a heightened and imminent risk of fraud, identity theft, and financial harm. Plaintiffs and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiffs and Class Members have also incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter and detect identity theft. The unauthorized acquisition of Plaintiff's and Class Members' PII and PHI has also diminished the value of the PII and PHI.

91. The harm to Plaintiffs and Class Members was a proximate, reasonably foreseeable result of Defendants' breaches of the aforementioned duties.

92. Therefore, Plaintiffs and Class Members are entitled to damages in an amount to be proven at trial.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Class Against Defendant)**

93. Plaintiff restates and realleges paragraphs 1 through 76 above as if fully set forth herein.

94. Defendants had duties arising under the FTC Act and HIPAA to protect Plaintiff's and Class Members' Private Information.

95. Defendants breached their duties, pursuant to the FTC Act, HIPAA, and other applicable standards, and thus were negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following: (i) failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information; (ii) failing to adequately monitor the security of their networks and systems; (iii) allowing unauthorized access to Class Members' Private Information; (iv) failing to detect in a timely manner that Class Members' Private Information had been compromised; (v) failing to remove their former patients' Private Information they were no longer required to retain pursuant to regulations; and (vi) failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

96. Defendants' violations of Section 5 of the FTC Act and HIPAA (and similar state statutes, including but not limited to Ohio Rev. Code Chapter 3798) constitute negligence *per se*.

97. Plaintiff and Class Members are consumers within the class of persons that Section 5 of the FTC Act and HIPAA were intended to protect.

98. The harm that has occurred is the type of harm the FTC Act and HIPAA were intended to guard against.

99. The FTC has pursued enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

100. Defendants breached their duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

101. In addition, under state data security and consumer protection statutes such as those outlined herein, Defendants had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class Members' Private Information.

102. Plaintiff and Class Members were foreseeable victims of Defendants' violations of the FTC Act and HIPAA, and state data security and consumer protection statutes. Defendants knew or should have known that their failure to implement reasonable data security measures to protect and safeguard Plaintiff's and Class Members' Private Information would cause damage to Plaintiff and the Class.

103. As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) the actual misuse of their compromised Private Information; (ii) invasion of privacy; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails; and (vii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access

and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

104. As a direct and proximate result of Defendants' negligence *per se* Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class Against Defendant)**

105. Plaintiff restates and realleges paragraphs 1 through 76 above as if fully set forth herein.

106. Plaintiff and Class Members were required deliver their Private Information to Defendants to obtain services from Defendants. Plaintiff and Class Members paid for services and provided their Private Information to Defendants with the assumption that a portion of Defendants' earnings would be used to adequately safeguard their Private Information and would not have done so had they known that Defendants' data security practices were substandard.

107. Defendants solicited, offered, and invited Class Members to provide their Private Information as part of Defendants' regular business practices. Plaintiff and Class Members accepted Defendants' offers and provided their Private Information to Defendants.

108. Defendants accepted possession of Plaintiff's and Class Members' Private Information for the purpose of performing its regular business operations.

109. Plaintiff and the Class entrusted their Private Information to Defendants. In so doing, Plaintiff and the Class entered into implied contracts with Defendants by which Defendants

agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

110. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendants' data security practices complied with relevant laws and regulations (including FTC guidelines on data security) and were consistent with industry standards.

111. Implicit in the agreement between Plaintiff and Class Members and the Defendants to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the Private Information only under conditions that kept such information secure and confidential.

112. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendants, on the other, is demonstrated by their conduct and course of dealing.

113. At all relevant times Defendants promulgated, adopted, and implemented written privacy policies whereby they expressly promised Plaintiff and Class Members that they would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

114. Defendants further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected in Defendants' privacy policy posted on its website.

115. Defendants' Privacy Policy and Terms & Conditions of Use, which Plaintiff and Class Members agreed to by using Defendants' website, expressly represents that all patient information is kept confidential in their HIPAA-compliant file storage system.

116. Based on Defendants' conduct and representations, Plaintiff and Class Members provided their Private Information to Defendants with the reasonable belief and expectation that Defendants would use part of its earnings to obtain adequate data security. Defendants failed to do so.

117. Plaintiff and Class Members would not have entrusted their Private Information to Defendants in the absence of the implied contract between them and Defendants to keep their information reasonably secure.

118. Plaintiff and Class Members would not have entrusted their Private Information to Defendants in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

119. Every contract in this State has an implied covenant of good faith and fair dealing, which is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

120. Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendants.

121. Defendants breached the implied contracts they made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to delete the information

of Plaintiff and the Class once the relationship ended, and by failing to provide accurate notice to them that personal information was compromised as a result of the Data Breach.

122. Defendants breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of Private Information and storage of other personal information after Defendants knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

123. As a direct and proximate result of Defendants' breach of the implied contracts, Plaintiff and Class Members sustained damages, including, but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) actual misuse of the compromised data consisting of an increase in spam calls, texts, and/or emails; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

124. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

125. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit

to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class Against Defendant)**

126. Plaintiff restates and realleges paragraphs 1 through 74 above as if fully set forth herein.

127. This count is brought in the alternative to Plaintiff's breach of implied contract claim.

128. Plaintiff and Class Members conferred a benefit on Defendants by paying Defendants for their services and for them to maintain Plaintiff and Class Members' Private Information, and by providing their Private Information to Defendants to use in the regular course of their business.

129. The funds Plaintiff and Class Members paid to Defendants were supposed to be used by Defendants, in part, to pay for the administrative and other costs of providing reasonable data security and protection to Plaintiff and Class Members.

130. Defendants failed to provide reasonable security, safeguards, and protections to the Private Information of Plaintiff and Class Members, and as a result Defendants were overpaid.

131. Under principles of equity and good conscience, Defendants should not be permitted to retain the money because Defendants failed to provide adequate safeguards and security measures to protect Plaintiff and Class Members' Private Information that they paid for but did not receive.

132. Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiff and Class Members.

133. Defendants' enrichment at the expense of Plaintiff and Class Members is and was unjust.

134. Plaintiff has no adequate remedy at law.

135. As a result of Defendants' wrongful conduct, as alleged above, Plaintiff and the Class are entitled to restitution and disgorgement of profits, benefits, and other compensation obtained by Defendants, plus attorneys' fees, costs, and interest thereon.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all other members of the class, respectfully requests that the Court enter judgment in his favor against Defendants jointly and severally as follows:

A. Certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B. Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, nominal damages and disgorgement;

C. Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of himself and the class, seek appropriate injunctive relief designed to prevent Defendants from experiencing another data breach by adopting and implementing best data security practices to safeguard Private Information and to provide or extend credit monitoring services and similar services to protect against all types of identity theft;

D. Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Awarding Plaintiff and the Class such other relief as allowable under law.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury of all claims herein so triable.

Dated: January 30, 2026

Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates (0085579) – Trial Attorney
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*tcoates@msdlegal.com*

Thomas E. Loeser*
**COTCHETT, PITRE & MCCARTHY LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 970-8181
Fax: (650) 697-0577
Email: tloeser@cpmlegal.com

*Counsel for Plaintiff and the Putative Class*

* *Motion for admission* pro hac vice *forthcoming*